SCANNED at and Emailed 2/24/16 by CCP, 19 pages

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KACEY LEWIS,                : DOCKET # 3:12-CV-01070-VLB
   Plaintiff
  V.

MARK FRAYNE, MD
ROBERT BERGER, MD
GERARD GAGNE, JR, MD
JOHN DOE I
JOHN DOE II
   Defendants
                            : FEBRUARY 24, 2016

## AMENDED COMPLAINT

Pursuant to Rule 15(a) Fed. R. Civ. P., and in compliance with this court's [72] order, the plaintiff Kacey Lewis, pro se respectfully submits his amended complaint.

## INTRODUCTION

In this amended complaint, the plaintiff adds facts in support of his constitutional claims raised in his initial complaint [doc#1] and in support of his allegations in paragraphs 1-16 and 30-31 of his affidavit attached to motion for leave to amend complaint [doc #34]. Additionally, the plaintiff adds John Doe I and John Doe II as defendant's in this action. The grounds for adding these two persons is pleaded in paragraphs 12-16 of the plaintiff's affidavit attached to his [34] motion to amend, and also set forth herein. The plaintiff intends to verify the real names of John Doe I & II by the discovery process within the time highlighted in this court's [73] order.

1

## SPECIFIC FACTS

1. On April 12, 2011, the defendants Frayne and Gagne approached the cell the plaintiff was housed in, 1 East Unit, at the Northern Correctional Institution in Somers, Connecticut ("Northern").

2. Dr. Frayne began asking the plaintiff about a court case pending in the Connecticut Superior Court: Kacey Lewis v. State of Connecticut, UWY-CV11-5016132.

3. The plaintiff told Dr. Frayne that he should contact the Office of the Attorney General to address his questions related to any pending cases the plaintiff had in the courts.

4. When the plaintiff refused to answer Dr. Frayne's questions, the defendant Frayne made a series of threats to the plaintiff, i.e. telling the plaintiff that he should stop going to court and that things would only get worst, and warning the plaintiff stating: "If things don't go right the next time you go to court I am going to deal with you." (emphasis added).

5. The defendant Dr. Gagne was standing right next to Dr. Frayne during this encounter. Dr. Gagne was also laughing and smirking and appearing to find Dr. Frayne's threats to the plaintiff amusing. The plaintiff, however, found Dr. Frayne's threats intimidating & frightning.

2

6. ON APRIL 13, 2011, THE PLAINTIFF WROTE AND SENT AN REQUEST TO THE WARDEN AT NORTHERN REPORTING THAT DR. FRAYNE MADE THREATS TO HIM ABOUT GOING TO COURT. IN SAID REQUEST, THE PLAINTIFF REQUESTED THAT DR. FRAYNE BE INSTRUCTED TO REFRAIN FROM APPROACHING HIM.

7. NOTWITHSTANDING THE PLAINTIFF'S REQUEST TO THE WARDEN, THE DEFENDANT FRAYNE RETURNED TO THE PLAINTIFF'S CELL ON MAY 19, 2011 INSISTING THAT THAT THE PLAINTIFF MEET AND SPEAK WITH HIM.

8. WHEN THE PLAINTIFF DECLINED TO SPEAK WITH THE DEFENDANT FRAYNE, THIS DEFENDANT LEFT, AND THEN RETURNED TO THE CELL THE PLAINTIFF WAS HOUSED IN WITH CORRECTIONAL SUPERVISORS CAPTAIN CAHILL AND LIEUTENANT PAFUMI.

9. THE DEFENDANT FRAYNE THEN INSTRUCTED CORRECTIONAL CUSTODY SUPERVISORS AND OTHER CORRECTIONAL STAFF TO APPLY RESTRAINTS AND FORCE ON THE PLAINTIFF.

10. CORRECTIONAL CUSTODY STAFF THEN THREATEN TO USE CHEMICAL AGENTS ON THE PLAINTIFF AND THEN FORCIBLY REMOVED THE PLAINTIFF FROM HOUSING UNIT 1-EAST AT NORTHERN TO A MEDICAL UNIT AT NORTHERN UNDER THE DIRECTIONS OF THE DEFENDANT FRAYNE.

11. DR. FRAYNE ORDERED THE PLAINTIFF'S PLACEMENT INTO A FILTHY CELL INFESTED WITH ANTS AND FLIES AND THE CELL ALSO HAD EXCREMENT SMEARED ON THE WALLS AND FLOORS.

12. THE DEFENDANT FRAYNE ALSO DEPRIVED THE PLAINTIFF OF ADEQUATE CLOTHING FOR SEVERAL DAYS, WHEN UNJUSTIFIABLY INSTRUCTING CORRECTIONAL STAFF TO REMOVE AND CONFISCATE EVERY ITEM OF CLOTHING FROM THE PLAINTIFF'S BODY, INCLUDING HIS BOXER UNDERWEAR, T-SHIRT, AND SOCKS. CONSEQUENTLY, THE PLAINTIFF WAS FORCED TO TIPTOE AROUND THE FILTHY CELL BAREFOOTED, WHILE TRYING TO AVOID STEPPING INTO THE EXCREMENT AND BUGS COVERING THE CELL FLOOR.

13. ON OR ABOUT JUNE 6, 2011, THE DEFENDANT FRAYNE ATTEMPTED TO FORCE THE PLAINTIFF TO WEAR SOILED UNDERWEAR AND SOCKS PREVIOUSLY WORN BY ANOTHER PRISONER, BY LEAVING THE PLAINTIFF WITH NO REASONABLE ALTERNATIVE, BY FORCING PLAINTIFF TO CHOOSE BETWEEN WEARING SOILED UNDERWEAR PREVIOUSLY WORN BY ANOTHER PRISONER OR DWELLING IN THE FILTHY CELL NAKED. CONSEQUENTLY, THE PLAINTIFF WAS FORCED TO DWELL IN A FILTHY CELL INFESTED WITH FLIES AND ANTS-- WITH EXCREMENT SMEARED ON THE WALLS AND FLOORS, WHILE NAKED, i.e., NO SOCKS, OR UNDERWEAR.

14. ON OR ABOUT JUNE 7, 2011, THE PLAINTIFF ASKED C.O. OFFICER JOHNSON ASSIGNED TO THE MEDICAL UNIT AT NORTHERN FOR HIS PERSONAL CLOTHING ITEMS STORED IN HIS PROPERTY BAGS, AND THE OFFICER STATED THAT EVERYTHING IN MEDICAL UNIT HAD TO GO THROUGH DR. FRAYNE

15. On or about June 7, 2011, the plaintiff asked C.O. Officer Johnson, assigned to the medical unit at Northern for cleaning supplies to clean the filthy cell, and the officer stated that everything in medical unit had to go through Dr. Frayne.

16. On or about June 8, 2011, the plaintiff told Dr. Frayne that he objected to the previously-worn-soiled-underwear offered to him, and to being confined in the filthy cell, and he asked to be given his own personal clothing items from his property bags, and to either be allowed access to cleaning supplies to clean the cell or be moved to a different cell.

17. Dr. Frayne told the plaintiff that in order to be allowed access to his personal clothing items and cleaning supplies, that the plaintiff would first have to agree to talking to him and Dr. Gagne, and agree to voluntarily taking medication.

18. When the plaintiff declined Dr. Frayne's invitation to meet and talk with him and Dr. Gagne and the invitation to voluntarily take psychotropic drugs, the defendant Frayne denied the plaintiff's requests for his personal clothing items and cleaning supplies.

19. The defendant Frayne also deprived the plaintiff of writing implements, i.e. no access to pen, paper or pencil for several weeks of confinement in filthy cell in medical unit -- incommunicado unjustly.

5

20. At some point and time, in June 2011, while being unjustly held incommunicado, forcibly drugged with psychotropics, and deprived of adequate clothing, the Plaintiff received a legal visit with civil rights attorney Sally Roberts from the law office of Peter Lipton & Associates. Then only, Dr. Frayne concededly provided the Plaintiff with a state issued jumpsuit and state issued sneakers, and the Plaintiff was permitted to dress and meet with Attorney Roberts to discuss legal matters not related to Plaintiff's conditions of confinement.

21. It should be noted that Dr. Frayne, even when conceding in providing the Plaintiff a jumpsuit and sneakers to dress for a legal visit, still failed and/or refused to provide the Plaintiff with socks and underwear.

22. It should also be noted that Dr. Frayne never attempted to explain why the Plaintiff was not given his own personal clothing items that he had in his property bags.

23. On May 31, 2011, Dr. Frayne posted a notice on the outside of the cell window that the Plaintiff was confined in, in the Medical Unit at Northern. Said notice indicated that a mental health hearing would convene on June 1, 2011 to determine if the Plaintiff Kacey Lewis should be involuntary medicated.

24. THERE WAS NOTHING IN THE NOTICE STATING ANY GROUNDS OR REASONS WHY A HEARING WAS BEING HELD TO DETERMINE IF KACEY LEWIS SHOULD BE INVOLUNTARY MEDICATED.

25. NO CORRECTIONAL STAFF EVERY TOLD THE PLAINTIFF WHY HE WAS BEING RECOMMENDED FOR INVOLUNTARY MEDICATION, NOR DID ANY OF THE NAMED DEFENDANTS.

26. NO CORRECTIONAL STAFF EVER OFFERED KACEY LEWIS THE ASSISTANCE OF AN ADVOCATE OR INFORM THE PLAINTIFF THAT HE HAD A RIGHT TO AN ADVOCATE, NOR DID ANY OF THE NAMED DEFENDANTS.

27. BECAUSE THE DEFENDANTS DID NOT PROVIDE THE PLAINTIFF WITH AN ADVOCATE FOR THE MENTAL HEALTH PANEL THAT CONVENED ON JUNE 1, 2011, THE PLAINTIFF HAD WAY OF KNOWING THAT HE HAD A RIGHT TO CALL WITNESSES OR ASK QUESTIONS AT THE JUNE 1, 2011 PANEL.

28. BECAUSE THE DEFENDANT'S DID NOT TELL THE PLAINTIFF ANY REASONS WHY HE WAS BEING BROUGHT TO A MENTAL HEALTH HEARING TO DETERMINE IF HE SHOULD BE INVOLUNTARY MEDICATED, THE PLAINTIFF HAD NO WAY TO CHALLENGE THE PANEL PROCESS.

29. ON JUNE 1, 2011, THE DEFENDANT ROBERT BERGER CAME TO THE CELL THE PLAINTIFF WAS CONFINED IN, IN THE MEDICAL UNIT AT NORTHERN AND ASKED THE PLAINTIFF KACEY LEWIS HIS AGE AND WHETHER

7

or not the plaintiff had every received mental health treatment in the past.

30. The plaintiff told Dr. Berger that he was 41 and that he never been treated for mental health issues. He also told Dr. Berger that his mental health score was a level 1 upon his admission into the Dep't of Corrections on July 21, 2009.

31. Dr. Berger then left, and the plaintiff never saw him again. Several hours later, the Defendant's Dr. Frayne and Dr. Gagne returned to the plaintiff's cell indicating that Dr. Berger had authorized for the Dep't of Corrections to involuntary medicate plaintiff Kacey Lewis.

32. The plaintiff Kacey Lewis objected to being involuntary medicated and he argued to the Defendant's that he had a due process right not to be medicated against his will. Plaintiff also stated he wanted to appeal Dr. Berger's decision.

33. On June 1, 2011, Dr. Frayne told the plaintiff that there was no appeal process for being involuntary medicated. Dr. Frayne also told the plaintiff that he was not entitled to due process, because the panel was not a legal proceeding, but a medical decision.

-8-

34. On June 1, 2011, the defendant Dr. Gagne ordered that the plaintiff Kacey Lewis be medicated with psychotropic drugs against his will. Prison staff at Northern then forcibly drugged the plaintiff with psychotropic injections.

35. Between June 1, 2011, and June 13, 2011, the defendant Dr. Gagne ordered around seventeen (17) forceable injections of psychotropic drugs into the plaintiff's body without due process.

36. Thereafter, in June 2011, the defendant Dr. Frayne instructed custody supervisors to use chemical agents, force and restraint on the plaintiff, and again, forcibly removed the plaintiff from Housing Unit-1 East-Northern to Medical/Infirmary-Northern, for the purpose of forcibly injecting the plaintiff with drugs.

37. On July 11, 2011, a nurse named Delores Walker came to the cell the plaintiff was confined in at Northern and asked the plaintiff if he would agree to come out of his cell so that she could inject the plaintiff with psychotropics. When the plaintiff declined her invitation, Nurse Delores left and then returned with the defendant's Dr. Frayne and Dr. Gagne.

38. Dr. Frayne told the plaintiff that if he did not come out and allow the nurse to medicate him, that he would, again, instruct custody

STAFF TO EXTRACT THE PLAINTIFF FROM THE CELL BY USAGE OF CHEMICAL AGENTS, FORCE AND RESTRAINT, AND HAVE THE PLAINTIFF, AGAIN PLACED INTO THE FILTHY MEDICAL UNIT.

39. THE PLAINTIFF WAS VERY FRIGHTFUL ABOUT THE PROSPECT OF CUSTODY STAFF SPRAYING HIM AGAIN WITH CHEMICAL AGENTS ("CAPSICUM") AND FORCIBLY EXTRACTED HIM AND RETRAINING HIM, AND AGAIN PLACING HIM INTO THE FILTHY CELL IN THE MEDICAL.

40. SUBSEQUENTLY, THE PLAINTIFF WAS ESCORTED BY CUSTODY STAFF INTO A MEDICAL ROOM, WHERE HE ENCOUNTERED THE DEFENDANT'S DR. FRAYNE AND DR. GAGNE. CUSTODY STAFF THEN ORDERED THE PLAINTIFF TO SIT IN A CHAIR. THE PLAINTIFF WAS THEN HELD BY CUSTODY STAFF, WHILE NURSE DELORES WALKER INJECTED THE PLAINTIFF INTO HIS LEFT UPPER ARM, WHILE THE DEFENDANT'S FRAYNE AND GAGNE LOOKED ON. IT SHOULD BE NOTED THAT THE PLAINTIFF WAS VERBALLY OBJECTING TO BEING FORCIBLY DRUGGED AGAINST HIS WILL.

41. ON AUGUST 10, 2011, CORRECTIONAL OFFICER BADUEO CAME TO THE CELL PLAINTIFF WAS CONFINED IN AT NORTHERN AND TOLD PLAINTIFF IF HE DID NOT AGREE TO COME OUT OF HIS CELL AND ALLOW THE NURSE TO INJECT HIM WITH MEDICATION THAT HE WOULD CALL LT. SAILOR AND HAVE PLAINTIFF EXTRACTED BY USE OF CHEMICAL AGENTS ("CAPSICUM"), FORCE AND RESTRAINT.

42. SUBSEQUENTLY, ON AUGUST 10, 2011 AROUND 10:00 A.M.

THE PLAINTIFF WAS AGAIN ESCORTED BY CUSTODY STAFF AT NORTHERN INTO A MEDICAL ROOM, WHERE HE ENCOUNTERED THE DEFENDANT DR. GAGNE AND NURSE DELORES WALKER. CUSTODY STAFF HELD THE PLAINTIFF AND DR. GAGNE ORDERED NURSE DELORES TO INJECT THE PLAINTIFF INTO HIS UPPER LEFT ARM WITH PSYCHOTROPICS--OVER THE PLAINTIFF'S OBJECTIONS.

43. PRIOR TO AUGUST 10, 2011, THE DEFENDANT DR. FRAYNE, ON JULY 11, 2011 CAME TO THE CELL THAT THE PLAINTIFF KACEY LEWIS WAS HOUSED IN AT NORTHERN AND INSTRUCTED CUSTODY SUPERVISOR LIEUTENANT SHARP TO PLACE IN-CELL RESTRAINTS ON THE PLAINTIFF AND TO ISSUE THE PLAINTIFF A CLASS A DISCIPLINARY REPORT BECAUSE THE PLAINTIFF DECLINED TO BE INJECTED WITH MEDICATION.

44. ON AUGUST 31, 2011, THE DEFENDANT DR. GAGNE INSTRUCTED NURSE DELORES WALKER TO AGAIN FORCIBLY INJECT THE PLAINTIFF INTO HIS UPPER LEFT ARM WITH PSYCHOTROPIC DRUGS--OVER THE PLAINTIFF'S OBJECTION.

45. ON SEPTEMBER 21, 2011, THE DEFENDANT DR. GAGNE INSTRUCTED NURSE DELORES WALKER TO FORCIBLY INJECT THE PLAINTIFF INTO HIS UPPER RIGHT ARM WITH PSYCHOTROPIC DRUGS--OVER PLAINTIFF'S OBJECTION.

46. ON OCTOBER 12, 2011, CORRECTIONAL OFFICER GORMAN HELD THE PLAINTIFF DOWN, WHILE NURSE DELORES WALKER FORCIBLY INJECTED THE PLAINTIFF INTO HIS UPPER RIGHT ARM--OVER PLAINTIFF'S OBJECTION.

47. On November 2, 2011, the defendant Dr. Gagne instructed Nurse Delores Walker to forcibly inject the plaintiff into his upper left arm with psychotropic drugs -- over plaintiff's objection.

48. Thereafter, in November 2011, the defendant Dr. Mark Frayne instructed custody staff at Northern to again, forcibly remove the plaintiff from housing unit to medical unit without justification.

49. Between June 1, 2011, and November 18, 2011, the defendant Dr. Gagne ordered around or about twenty five (25) forceable injections of pscychotropic drugs into the plaintiff's body without due process and he knowingly and willfully violated the plaintiff's constitutional rights.

50. The forceable injections of psychotropics ordered by Dr. Gagne caused plaintiff to suffer an irreversible neurological disorder ("Tardive Dyskinesia").

51. The defendant Mark Frayne unlawfully used his position as a doctor to intimidate, threaten, harass and torture the plaintiff, and he also knowingly and willfully violated the plaintiffs constitutional rights, and conspired to have the plaintiff involuntary medicated without due-process.

52. The defendant Robert Berger knowingly and willfully violated the plaintiff's constitutional rights, when conspiring with defendant's and authorizing plaintiff to be involuntary medicated without due process.

12

53. On June 15, 2011, the Plaintiff Kacey Lewis filed an Inmate Administrative Remedy requesting a Health Services Review of the Involuntary Medication Panel decision of June 1, 2011, asking that the decision to involuntary medicate him be reversed. (Exhibit D, p.1).

54. On June 29, 2011, the defendant Mark Frayne entered a disposition denying the Plaintiff's administrative remedy(ies) Health Service Review. See (Exhibit D). See A...

55. On June 18, 2011, the Plaintiff Kacey Lewis also filed an administrative remedy related to being forcibly placed into a filthy cell and deprived of basic human needs asking that the staff responsible for the Eight Amendment violations be terminated, and the defendant Mark Frayne, also denied Plaintiff's administrative remedy. See (Exhibit C, p.1). See also (Exhibit F, p.1).

56. On July 20, 2011, the Plaintiff submitted a Level 2 Administrative Remedy Appeal of Dr. Frayne's denial.

57. On August 1, 2011, Defendant John Doe I denied the Plaintiff's Appeal. (Exhibit F, p.2).

58. On August 2, 2011, the Plaintiff submitted a Level 3 Administrative Remedy Appeal, and on August 31, 2011 Defendant John Doe II denied the Plaintiff's Appeal (Exhibit F, p.2); (Exhibit C, p.2); (Exhibit D, p.2).

59. THE DEFENDANT JOHN DOE I, KNEW THAT DR. FRAYNE PARTICIPATED IN THE RESOLUTION OF PLAINTIFF'S ADMINISTRATIVE REMEDY SEEKING A REVIEW OF THE JUNE 1, 2011 DECISION TO MEDICATE PLAINTIFF AGAINST HIS WILL. JOHN DOE I ALSO KNEW THAT IT WAS CONTRARY TO DUE PROCESS OF LAW FOR THE DEFENDANT DR. FRAYNE TO PARTICIPATE IN THE RESOLUTION OF A COMPLAINT ABOUT HIS OWN ACTIONS. SEE (EXHIBIT G, P.4).

60. THE DEFENDANT JOHN DOE I, CONCLUDED THAT: THE PLAINTIFF "HAD NO RIGHT TO CHOOSE OTHER STAFF [TO REVIEW HIS COMPLAINT] OTHER THAN THE ONES ASSIGNED." (EXHIBIT F, P.2).

61. THE DEFENDANT JOHN DOE I, ERRONEOUSLY CONCLUDED IT WAS PROPER FOR DR. FRAYNE TO INVESTIGATE AND PARTICIPATE IN THE RESOLUTION OF AN ADMINISTRATIVE REMEDY, WHEN DR. FRAYNE WAS THE SUBJECT OF PLAINTIFF'S GRIEVANCES. IN DOING SO, JOHN DOE I, SHOWED A CALLUS DISREGARD TO PLAINTIFF'S DUE PROCESS RIGHTS AND TO CONSEQUENCES.

62. THE DEFENDANT JOHN DOE I, DID KNOWINGLY AND WILLFULLY VIOLATE THE PLAINTIFF'S DUE PROCESS RIGHTS GUARANTEED BY THE 14th AMENDMENT TO THE UNITED STATE'S CONSTITUTION, BY ALLOWING THE INVOLUNTARY MEDICATION ORDER TO STAND, EVEN WHEN KNOWING IT WAS UNCONSTITUTIONAL.

63. On August 2, 2011, the Plaintiff submitted a Level 3 Administrative Appeal of the decision made on June 1, 2011 to medicate the Plaintiff against his will (Exhibit D, p.2). Plaintiff also submitted a Level 3 Administrative Appeal of the EIGHT Amendment violations concerning forcibly being placed into a filthy cell and deprived of basic human needs. (Exhibit C, p.2); (Exhibit F, p.2).

64. On August 31, 2011, Defendant John Doe II denied Plaintiff's administrative remedy appeals.

65. The Defendant John Doe II, did know that the Defendant Mark Frayne participated in the resolution of the Plaintiff's administrative remedy(ies) seeking review of the June 1, 2011 Panel decision.

66. The Defendant John Doe II also knew that it was contrary to due process of law and contrary to administrative remedy procedure for Dr. Frayne to participate in the resolution of an administrative remedy, when Dr. Frayne was the subject of the Plaintiff's grievances. See (Exhibit G, p.4).

67. The Defendant John Doe II, did knowingly and willfully violate the Plaintiff's due process rights guaranteed by the 14th Amendment to the United States Constitution, by allowing the involuntary medication order to stand, even when he

15

KNEW THAT IT WAS UNCONSTITUTIONAL.

68. BY ERRONEOUSLY CONCLUDING THAT THE PLAINTIFF HAD A UNBIAS ADMINISTRATIVE REMEDY(IES) REVIEW, JOHN II SHOWED A CALLUS DISREGARD TO PLAINTIFFS CONSTITUTIONAL DUE PROCESS RIGHTS AND TO THE CONSEQUENCES.

69. ON NOVEMBER 18, 2011, PRISON OFFICAIS TRANSFERRED PLAINTIFF FROM NORTHERN IN SOMERS TO GARNER IN NEWTOWN.

70. AFTER THE PLAINTIFF WAS TRANSFERRED TO GARNER, AND AFTER HE FILED HIS INITIAL COMPLAINT IN THIS ACTION, HE LEARNED THAT THE DEFENDANT GAGNE WROTE FALSE INFORMATION IN HIS MEDICAL FILE.

71. THE FALSE INFORMATION WRITTEN BY DR. GAGNE WAS EXECUTED WITH MALICIOUS INTENT TO DEPRIVE THE PLAINTIFF OF HIS CONSTITUTIONAL RIGHT TO BE FREE FROM BEING FORCIBLY INJECTED WITH MIND ALTERING DRUGS.

72. THE FALSE INFORMATION WRITTEN BY DR. GAGNE WAS USED FOR THE PURPOSES OF THE DEFENDANT'S RATIONALIZING AND JUSTIFYING INVOLUNTARY DRUGGING THE PLAINTIFF AGAINST HIS WILL.

73. SPECIFICALLY, DR. GAGNE WROTE A FALSE STATEMENT OF MATERIAL FACT THAT "PLAINTIFF ASSAULTED AN ATTORNEY IN A COURTROOM" (EXHIBIT J).

74. THE STATEMENT IS INDISPUTABLY FALSE AND WHOLLY UN-SUPPORTED BY FACTS, CONSTITUTING FRAUDULENT DECEPTION.

16

75. After the plaintiff filed his initial complaint in this action, he also learned the defendant's attached a <u>FAKE</u> diagnosis to his medical file. Specifically, the bogus diagnosis ascribing the plaintiff as a "paranoid schizophrenic".

76. Said diagnosis is totally bogus, and was made in bad faith by the defendant's with the malicious intent to deprive the plaintiff of his constitutional rights to be free from a forceful mind altering drug program and the stigmatizing ramifications of being classified as a mentally ill person, unjustly.

77. The bogus diagnosis was used for the purposes of the defendant's rationalizing and justifying forcibly drugging the plaintiff against his will, constituting fraudulent deception, in violation of the United States Constitution.

78. <u>Between October 8, 2010, and June 13, 2011,</u> the plaintiff had adamantly asserted his right <u>NOT</u> to speak to mental health staff at Northern <u>twenty one (21) times</u>. Specifically, the plaintiff had consistently refused to speak to Dr. Frayne, and Dr. Gagne, and he had consistently and adamantly refused to be evaluated by mental health staff. See. (Exhibit F, P.1).

79. The plaintiff never consented to being evaluated or treated by any of the named defendants.

17

80. THE DEFENDANT MARK FRAYNE DID HARASS AND INTIMIDATE THE PLAINTIFF FOR MONTHS, EVEN BEFORE THREATNING THE PLAINTIFF ON APRIL 12, 2011 ABOUT PROCEEDING IN A LEGAL CASE.

81. THE DEFENDANT MARK FRAYNE RETALIATED AGAINST THE PLAINTIFF, BECAUSE TO PLAINTIFF REFUSED TO SPEAK WITH HIM, WHEN HE HARASSED, THREATEN AND TORTURED THE PLAINTIFF, IN VIOLATION OF THE CONSTITUTION.

81. ALTOGETHER, THE NAMED DEFENDANT'S KNOWINGLY AND WILLFULLY VIOLATED THE PLAINTIFF'S CONSTITUTIONAL RIGHTS GUARANTEED BY THE U.S. CONSTITUTION WHEREFORE, THE PLAINTIFF PRAYS FOR THE FOLLOWING RELIEF:

(a) THAT HE RECOVER COMPENSATORY DAMAGES, IN SUCH AMOUNT AS THE JURY MAY DETERMINE, BUT NOT LESS THAN ONE MILLION ($1,000,000) DOLLARS.

(b) THAT HE RECOVER PUNITIVE DAMAGES, IN SUCH AMOUNT AS THE JURY MAY DETERMINE, BUT NOT LESS THAN TWO MILLION ($2,000,000) DOLLARS.

THE PLAINTIFF

02/24/2016
DATE

Kacey Lewis
KACEY LEWIS, PRO SE
INMATE # 165480
GARNER CORRECTIONAL INST.
50 NUNNAWAUK ROAD
NEWTOWN, CT 06470
TEL: NONE
FAX: NONE
EMAIL: NONE

18

UNITED STATES DISTRICT COURT DISTRICT OF CONNECTICUT

KACEY LEWIS : DOCKET #3:12 CV01070-VLB

V. :

FRAYNE, ET AL : FEBRUARY 24, 2016

CERTIFICATION OF SERVICE

I HEREBY CERTIFY THAT A COPY OF THE FOREGOING WAS MAILED, POSTAGE PREPAID ON THIS 24th DAY OF FEBRUARY, 2016, TO THE FOLLOWING COUNSEL OF RECORD:

TERRENCE M. O'NEILL
110 SHERMAN STREET
HARTFORD, CT 06105

*Kacey Lewis*
KACEY LEWIS