UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KACEY LEWIS : CIVIL ACTION NO. 3:12cv1070 (vlb)
:
v. :
:
MARK FRAYNE, ET AL., : MAY 10, 2016

### MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The defendants, Mark Frayne, Gerard Gagne and Robert Berger, file this brief opposition to plaintiff's motion for summary judgment. As shown below, and in the accompanying affidavits, there are clear disputes of material fact regarding the plaintiff's mental health condition and the treatment provided therefor, particularly as they relate to the decision by the defendant doctors to authorize and involuntarily administer psychoactive medications. Accordingly, the plaintiff's motion for summary judgment should be denied.


I. **Factual Background**

The following recitation of facts gives context to the defendants' opposition memorandum. Inmate Lewis was incarcerated at NCI from July 19, 2010 until his transfer to the Garner Correctional Institution on November 18, 2011. Frayne Affid. At ¶ 5. During his incarceration, at Northern, defendants Dr. Gerard Gagne (a psychiatrist) and Mark Frayne (a psychologist) diagnosed and treated the plaintiff for certain mental illnesses. Specifically, in the opinion of both Drs. Gagne and Frayne, Mr. Lewis suffered from a psychotic disorder which required

medication management, education regarding the nature of his disorder, and supportive therapy. See Frayne Affid. At ¶ 7; Gagne Affid. At ¶ 4. After increasingly paranoid, hostile and aggressive behaviors throughout the months of April and May, 2011, Drs. Frayne and Gagne became increasingly concerned that Mr. Lewis was becoming so unstable as to require infirmary care. Frayne Affid. At ¶ 8-9. Eventually, the plaintiff's condition deteriorated to the point where Dr. Gagne, as a prescribing psychiatrist, requested that a panel review the plaintiff and give permission to involuntarily medicate the plaintiff with psychoactive medications. Gagne Affid. At ¶ 5.

On May 31, 2011, Dr. Gagne notified the plaintiff that he would be seen by a panel the next day to consider whether Dr. Gagne should be given authorization to involuntarily medicate the plaintiff. Gagne Affi. At ¶ 5. Thereafter, on June 1, 2011, a panel consisting of defendants Mark Frayne and Robert Berger (a psychiatrist) as well as a non-party nurse, conducted an involuntary medication panel review of the plaintiff's records and a meeting with the plaintiff. See Frayne Affid. At ¶ 12, Dr. Frayne served as the plaintiff's advocate, although the plaintiff refused to cooperate with the panel process. Id. At 12-13. At the conclusion of the panel review, the panel decided to authorize Dr. Gagne to involuntarily medicate the plaintiff as needed. Id. At 14; Panel Decision and 6/1/11 note of Dr. Berger appended to Dr. Gagne's affidavit.

After the panel decision, the plaintiff was involuntarily administered psychoactive medications on a number of occasions right up until he left Northern in November 2011. Frayne Affid. At ¶ 15. Plaintiff continued to be

2

involuntarily medicated after he left Northern and was transferred to the DOC mental health facility in Newtown, CT.[1]

In sum, the facts as established by the three doctors named as defendants in this action show that the mental health clinicians assigned to care for the plaintiff diagnosed him as suffering from a serious psychosis requiring involuntary medication. Moreover, as shown below, the affidavits of Drs. Gagne and Frayne, and the portions of the plaintiff's medical chart appended to Dr. Gagne's affidavit, establish that the panel which considered the request to involuntary medicate the plaintiff fully accommodated the plaintiff's due process rights. The defendants' proffer of evidence clearly shows that there are disputed issues of fact and the plaintiff is not entitled to judgment as a matter of law.

## II.    ARGUMENT

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) permits the entry of Summary Judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "[T]he mere existence of a factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact."

---

[1] With respect to the continued, involuntary administration of psychoactive medications after leaving Northern, the defendants ask that the court take judicial notice of the plaintiff's admissions in the recently filed case *Lewis v. Lee*, No. 3:16CV589 (VLB).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* A "material fact" is one whose resolution will affect the ultimate determination of the case. *Id.* In determining whether a material fact exists, the court must resolve all ambiguities in favor of the non-moving party. *Id.*, at 255; see also *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990), *cert. denied*, 499 U.S. 921, 11 S.Ct. 1313, 113 L.Ed.2d 246 (1991). The Supreme Court has stated:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules, as a whole, which is designed to secure the just, speedy and inexpensive determination of every action.

*Celotex, Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Used properly, Rule 56 is a "vital procedural tool to avoid wasteful trials," *Capitol Imaging Assocs. v. Mohawk Valley Medical Assocs.*, 996 F.2d 537, 541 (2d Cir.), *cert. denied*, 510 U.S. 497 (1993), and to "isolate and dispose of factually unsupported claims." *Celotex Corp.*, at 323-324.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the portions of the pleadings, affidavits or other documentary evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Those facts that are material will be identified by the substantive law governing the case. *Anderson*, 477 U.S. at 248. Only if the moving party meets this burden does burden shift to the non-moving party.

4

### B. The Plaintiff Has Failed To Show That The Undisputed Material Facts Support His Claims

Giving the pro se plaintiff some latitude, his complaint can be fairly read to claim that he was involuntarily medicated in retaliation for certain unidentified actions and that the process leading to his forced medications did not comport with established due process standards. Clearly the plaintiff has failed to carry his burden.

The issue of involuntarily medicating an inmate with psychoactive medication was squarely addressed by the United States Supreme Court in *Washington v. Harper*, 494 U.S. 210 (1990). In *Washington*, the Court held that inmates have a Fourteenth Amendment right to be free from unwanted antipsychotic drugs without first having prison officials satisfy certain due process requirements. *Id.*, at 221-22. The Court upheld the involuntary medication of a Washington inmate because the policy at issue predicated such actions on: (1) a medical finding that a mental disorder exists which is likely to cause harm if not treated; (2) the medication must first be prescribed by a psychiatrist, and then approved by a reviewing psychiatrist "only if it is in the prisoner's medical interests, given the legitimate needs of his institutional confinement;" (3) notice; (4) the right to be present at an adversary proceeding; and (5) the right to cross-examine witnesses. *Id.*, at 222-23, 235. The Court specifically rejected a claim that the inmate must be found "incompetent." *Id.*, at 226.

As detailed in the affidavits of Drs. Frayne and Gagne, and as shown in the documents from the plaintiff's medical records appended to Dr. Gagne's affidavit,

, all the factors set forth in *Washington* apply in this case. It was found that a serious medical disorder exists that is harming the plaintiff. The panel consisted of a non-referring psychiatrist, a health services staff person and a patient advocate. Notice was afforded the plaintiff. He was present at the proceedings and he was given the opportunity to express his views regarding medication treatment. Rather than participate and cooperate with the panel, plaintiff refused all efforts to discuss his treatment. Although plaintiff may be unhappy with the panel decision, "notwithstanding the risks that are involved, we conclude that an inmates' interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge." Id., at 231.

The policy upheld in *Washington* provided that an inmate may be medicated if "(1) suffers from a 'mental disorder' and (2) is 'gravely disabled' or poses a likelihood of serious harm' to himself, others, or their property." *Id.*, at 215. The policy defined "gravely disabled" as "a condition in which a person, as a result of a mental disorder ... manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety." *Id.*, at 215-16, n.3.

The panel which authorized plaintiff's involuntary medication was presented with a diagnosis of psychosis NOS with paranoid and disordered thinking. The panel found him to have decompensated and in need of involuntary medication. The holding in *Washington* clearly applies to this case. The panel

6

policy and proceedings meet the standards set by *Washington*. Accordingly, plaintiff cannot succeed on the merits of his claim regarding involuntary medication.

Notably, the plaintiff's case is nearly identical to the panel process upheld by Judge Kravitz in *Batts v. Bogdanoff*, 2005 WL 3543774 (D. Conn. 2005). In Batts, the court conducted a *Harper* analysis of a virtually identical panel process involving a decompensating, violent inmate. And even more similarly, the plaintiff in *Batts*, like Mr. Lewis, offered no competent medical testimony or evidence to challenge the clinical judgments of the prescribing doctor or the panel members. Noting that, "[w]hen considering whether forced medication is necessary, courts are to defer to the judgment of medical personnel", Judge Kravits did just that and, citing Harper, concluded that "an inmate's interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge." *Id.* At p. 4.[2]

Clearly, the state has a strong interest in combating the danger posed by a mentally ill person to both himself and others. That danger "is greater in a prison environment, which, by definition, is made up of persons with a demonstrated proclivity for antisocial criminal, and often violent, conduct." *Washington*, *supra*, at 225 (internal quotation marks omitted). Given that strong interest, when one considers the complete absence of competent medical evidence to the contrary, a grant of summary judgment would be improper. While the plaintiff may choose to disagree with the treatment provided to him, his pro se assertions of his mental

---

[2] A copy of the unreported <u>Batts</u> decision is appended hereto so as to provide a copy to the plaintiff.

health condition are patently insufficient to establish that he is entitled to judgment as a matter of law.

C. Plaintiff's First, Fourth And Eighth Amendment Claims Are Without Merit

Finally, for the reasons discussed above, the plaintiff's remaining claims are without merit. With respect to his claim of retaliation, it is abundantly clear that the three clinicians named herein made clinical judgments regarding the plaintiff's mental health needs. Absent any countervailing evidence, the plaintiff has failed to even remotely suggest that there was any retaliation on the part of any of the defendants. Pursuant to the Second Circuit's instruction, this Court should analyze a claim of retaliation in the prison context with skepticism. The Second Circuit in Dawes v. Walker, 239 F.3d 489 (2d Cir 2001), expanded on the rationale as to why prisoners' claims of "retaliation" should be viewed with extra skepticism, stating:

> First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation-- can be characterized as a constitutionally proscribed retaliatory act. See Franco v. Kelly, 854 F.2d 584, 590 (2d Cir. 1988).

"Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." Dawes, 239 F.3d at 493. See also Thaddeus-X v. Blatter, 175 F.3d 378, 398 (6th Cir. 1999) (retaliation against an

8

inmate must be likely to "chill a person of ordinary firmness from continuing to engage" in a protected activity). "Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." Dawes, 239 F.3d at 493. In making this determination, the court's inquiry must be "tailored to the different circumstances in which retaliation claims arise," bearing in mind that "prisoners may be required to tolerate more . . . than average citizens, before a [retaliatory] action taken against them is considered adverse." Id. (quoting Thaddeus - X, 175 F.3d at 398).

Here, there was no retaliation whatsoever. The three defendant doctors all made clinical judgments, carried out those judgments and documented their actions in the plaintiff's medical chart. In order to prove a retaliation claim, the prisoner must demonstrate that his first amendment activities constituted the actual motivating factor, McDonald v. Hall, 610 F.2d 16 (1st Cir. 1979), or the "but for" cause of the conduct, Huang v. Board of Governors, 902 F.2d 1134, 1140 (4th Cir. 1990) (citations omitted). The plaintiff's failure to establish that the retaliation adversely impacted the prisoner's exercise of his constitutional rights is fatal to the prisoner's case. American Civil Liberties Union v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993).[3] The plaintiff has utterly failed to meet his burden of proof that he was subjected to alleged "retaliation" as a result of complaining about prison conditions.

---

[3] The alleged retaliation must be more than *de minimis*; that is, it must be sufficient to deter a similarly situated person of ordinary firmness from exercising his or her rights. Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003). Plaintiff here has not been deterred from exercising his rights in any manner, and does nothing to move his claim beyond the realm of speculation.

Similarly, the plaintiff has failed to establish that the defendants violated his Eighth Amendment rights. Under the "deliberate indifference" standard defined in *Farmer v. Brennan*, 511 U.S. 825 (1994), one of plaintiff's burdens in proving an Eighth Amendment violation is to demonstrate that the defendants knew of and disregarded an excessive risk to his health or safety. Here, there is absolutely no evidence to even question the clinical judgments of the name defendants, save for the plaintiff's unqualified disagreement with the care provided to him. To prevail on summary judgment, plaintiff is obliged to adduce evidence that defendants were deliberately indifferent to a serious medical or mental health need or substantial risk to his safety . *See* Farmer v. Brennan, at 834. This plaintiff cannot do.  This standard consists of both objective and subjective components. "Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." Hathaway v.. Coughlin, 99 F.3d 550, 553 (2d Cir.1996) (internal quotation marks omitted). "Subjectively, the charged official must act with a sufficiently culpable state of mind," *i.e.,* "something more than mere negligence" and akin to criminal recklessness. *Id.; accord* Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir.2006).Simpson v. Oakes, No. 15-635-PR, 2016 WL 791088, at *1 (2d Cir. Mar. 1, 2016).

At the time of the events alleged here, Supreme Court cases clearly require that the official "must both [have] be[en] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also [have] draw[n] the inference." Farmer, 511 U.S. at 837.  The culpable intent

requirement thus *requires a finding that the prison official* "kn[e]w[ ] of and disregard[ed] an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837, 114 S.Ct. 1970. Ross v. Correction Officers John & Jane Does 1-5, 610 F. App'x 75, 77 (2d Cir. 2015).

As established in the supporting affidavits of Drs. Frayne and Gagne, and in the medical records filed with Dr. Gagne's affidavit, there is abundant evidence to show that the defendants acted consistent with their clinical judgments to provide necessary care to the plaintiff. Plaintiff's only evidence to the contrary is his naked assertion that he did not want the care provided. In light of the standard for such claims, plaintiff's efforts fail to establish he is entitled to judgment on his Eighth Amendment Claim.

III.    <u>CONCLUSION</u>

For the foregoing reasons, the plaintiff has failed to establish that there are no disputed issues of material fact or that he is entitled to judgment as a matter of law. Accordingly, his motion for summary judgment should be denied.

DEFENDANTS:
Mark Frayne Et Al.,

GEORGE JEPSEN
ATTORNEY GENERAL

BY:     <u>/s/ Terrence M. O'Neill</u>
Terrence M. O'Neill
Assistant Attorney General
Federal Bar No. ct10835
110 Sherman Street
Hartford, CT 06105
Tel.: (860) 808-5450
Fax: (860) 808-5591
terrence.oneill@ct.gov

## CERTIFICATION

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A copy of the foregoing was also hand delivered by the undersigned to the plaintiff's correctional facility.

/s/   Terrence M. O'Neill
Terrence M. O'Neill
Assistant Attorney General
Federal Bar No. ct10835
110 Sherman Street
Hartford, CT  06105
Tel.: (860) 808-5450
Fax: (860) 808-5591
terrence.oneill@ct.gov

2005 WL 3543774
Only the Westlaw citation is currently available.
United States District Court,
D. Connecticut.

Charles BATTS
v.
Todd BOGANOFF

No. 3:04CV1191 MRK/WIG.
|
Dec. 8, 2005.

**Attorneys and Law Firms**

Charles Batts, Newtown, CT, pro se.

Ann E. Lynch, Attorney General's Office, Hartford, CT, for David Budlong.

RULING AND ORDER

KRAVITZ, J.

*1 In this civil rights action, *pro se* plaintiff Charles Batts alleges that he was denied his constitutional right to *refuse anti-psychotic medication, and that he has been* subject to unreasonably restrictive confinement. Mr. Batts seeks damages and injunctive relief in the form of an order preventing any further mental health treatment and reducing his mental health score. Pending before the Court are Plaintiff's *Motion for Leave of Court to File Second Amended Complaint* [doc. # 44]; Pl.'s *Motion for Order* [doc. # 56]; Defendant's *Motion for Summary Judgment* [doc. # 61–1]; Pl.'s *Motion and Motion for Pre–Order* [doc. # 64]; Pl.'s *Objection to Summary Judgment and Motion for Restraining Order* [doc. # 66]; Pl.'s *Motion for Order* [doc. # 69–1]; Pl.'s *Letter of Plaintiff to Judge* [doc. # 74] (requesting injunctive relief); Pl.'s *Motion for Payment of Filing Fee Costs* [doc. # 75–1]; Pl.'s *Motion for Temporary Restraining Order and Preliminary and Permanent Injunction [sic] Relief* [doc. # 75–1]; and Pl.'s *Additional Objection to Summary Judgment and Motion for Restraining Order* [doc. # 82]. For the reasons that follow, Mot. for Order [doc. # 69–1], Letter of Pl. to Judge [doc. # 74], Mot. for TRO and Prelim. and Permanent Inj. Relief [doc. # 75–1], Additional Objection to Summ. J. and Mot. for

Restraining Order [doc. # 82], and Mot. for Summ. J.[doc. # 61–1] are DENIED without prejudice, and all other motions are DENIED.

I

A. Facts
In connection with Mr. Batts's requests for preliminary *injunctive relief, portions of Mr. Batts's medical records* have been filed been filed with the Court along with affidavits from those involved in his case. *See* Objection to Motion for Preliminary Injunction [Doc. # 43–2]; Affidavit of Dr. Michel Mennesson [doc. # 61] [hereinafter "Mennesson Aff."]; Affidavit of Dr. Tod Bogdanoff [doc. # 61] [hereinafter "Bogdanoff Aff."]; Affidavit of Kristen Devoe, CSW [doc. # 77–2] [hereinafter "Devoe Aff."]; Affidavit of Judith Molloy, APRN [doc. # 77–3] [hereinafter "Molloy Aff."]. The *records and affidavits establish the following facts.*

Charles Batts is an inmate at Garner Correctional Institution. Dr. Michel Mennesson started treating Mr. Batts in 2003. *See* Mennesson Aff. ¶¶ 2–4. In December of that year, Mr. Batts was characterized by Dr. Mennesson "most likely schizoaffective," which means that Mr. Batts had symptoms of both schizophrenia and bipolar disorder. *Id.* ¶¶ 4–6 (describing Mr. Batts as "tangential, grandiose, [and] overly verbose, lacked insight, had very poor judgment, seemed to respond to internal stimuli and had incoherent speech or statements"). Mr. Batts had not been taking his psychotropic medication since February 2003, which concerned Dr. Mennesson because Mr. Batts "had proven to be assaultive in the past, when off medication." *Id.* ¶ 10. In particular, Mr. Batts had received a three-and-a-half-year sentence for assaulting prison staff at a time when he was not on his medication. *Id.* ¶ 5.

*2 Dr. Tod Bogdanoff met with Mr. Batts on December 25 and noted that Mr. Batts's thinking "had little connection to reality." Bogdanoff Aff. ¶ 12. For instance, Mr. Batts believed that his name appeared on the back of televisions and on batteries, "and that numbers had a special message." *Id.* Mr. Batts had "grandiose, paranoid delusions." *Id.* ¶ 13. Dr. Bogdanoff also noted that, in the past, Mr. Batts had "picked up multiple disciplinary reports and was dangerous to others" when he had become psychologically imbalanced. *Id.* ¶ 14.

Due to an increase in his delusional thinking, Mr. Batts

was referred from his cellblock to an inpatient mental health unit on or about December 29, 2003. *Id.* ¶ 15. Judith Molloy, an advanced practice registered nurse, monitored Mr. Batts's condition while in the mental health unit. According to Nurse Molloy, Mr. Batts displayed paranoid and delusional thoughts. *See* Molloy Aff. ¶ 5. She stated that Mr. Batts reported that his mother was taken by a UFO in the 1940s, but he would not discuss the incident because he believes that if he speaks of it, the UFO may return and abduct him. Nurse Molloy also said that Mr. Batts's speech was tangential and disorganized, switching repeatedly from one topic to a completely unrelated topic. *See id.* ¶ 6.

Because Mr. Batts was "delusional, ... easily provoked to anger, had no judgment or insight into [his] illness and needed medication"—which he had refused to take—Nurse Molloy requested on January 12, 2004, that a hearing be convened to decide whether Mr. Batts should be involuntarily medicated. Bogdanoff Aff. ¶ 17. The hearing was held two days later. Attending the hearing were panel members Dr. Liu, Dr. Mennesson, and psychiatric social worker Bill Kompare. *Id.* ¶ 18. Mr. Batts was given an opportunity to appear and present his side and was assisted by a prison-appointed advocate, Brian Henrickksen, and. *Id.* ¶ 20. At the conclusion of the hearing, the panel concluded that Mr. Batts should be involuntarily medicated because he was acutely psychotic, with paranoid delusions and an irritable affect, and because he met the criteria for a psychiatric emergency. *Id.* ¶ 21. Following the panel's decision, Mr. Batts was given an injection of medication. *Id.* ¶ 24.

While the record is not clear on the matter, it appears that at some point thereafter Mr. Batts went off medication again. On December 15, 2004, Mr. Batts sent a letter to a judge with a notation in the corner of the letter stating "Millet–Bernard needs a hit; Joey Rivera needs the death." A Bridgeport Federal Court clerk also stated that while inquiring about a motion, Mr. Batts said to her "Mille needs a hit" and "Joey or Joy River needs to be killed." The letter was forwarded to the Office of the Attorney General with a request that the matter be investigated. When questioned by correctional staff, Mr. Batts stated that the language he used was not intended as a threat; instead it was a secret message to the judge. Mr. Batts was not taking anti-psychotic medication at the time of these incidents. *See* Incident Report [doc. # 43–1].

**\*3** In February 2005, Dr. Alf Bergman reviewed Mr. Batts's medical records. *See* Progress Note [doc. # 43–1]. At that time, Mr. Batts was uncooperative, and he refused to answer questions regarding his mental health, stating that all of the required information was contained in his medical and mental health records—but then claiming that all his mental health records were lies. Based on his conversation with Mr. Batts, Dr. Bergman concluded that Mr. Batts would benefit from anti-psychotic medication, which may have helped him in the past. However, according to Dr. Bergman, Mr. Batts did not at the time "meet criteria for involuntary medication." Therefore, Mr. Batts was not involuntarily medicated at that time, but Dr. Bergman noted that Mr. Batts's condition should be monitored closely. *Id.*

In June and July 2005, Mr. Batts's paranoia and isolation were increasing. He left his cell much less frequently and refused to speak with the mental health staff. Molloy Aff. ¶ 7. Mr. Batts also did not take his medications and he became irritable and argumentative with custody staff, displaying paranoid and irrational behavior. Mr. Batts reported that, because he is schizophrenic, his eyeball comes out. Molloy Aff. at ¶¶ 7–14. In light of Mr. Batts's behavior and his history of violence when not medicated, Nurse Molloy again referred Mr. Batts's case to an independent panel for permission to involuntarily medicate him. *Id.* ¶ 12. Mr. Batts was informed that a panel would be convened to determine whether he should be involuntarily medicated. *Id.* ¶ 14. He met with mental health clinical social worker Kristen Devoe, who was assigned as his advocate for the panel hearing. Devoe Aff. ¶ 3.

The panel convened on August 3, 2005. The panel comprised Dr. Mahalingaich, psychologist K. Matthews, and Ms. Devoe, though Ms. Devoe maintains that she "did not really participate in the decision making process other than to ensure that Mr. Batts was allowed to present his position on the issue." *Id.* ¶ 6. None of the panel members was involved in treating Mr. Batts. Molloy Aff. ¶ 15. Despite being given the opportunity, Mr. Batts did not present any evidence at the panel hearing, although he did voice his objection to being medicated. *Id.* After reviewing Mr. Batts's medical records and hearing him speak, Dr. Mahalingaich and Mr. Matthews determined that Mr. Batts should be involuntarily medicated. They noted on the medical hearing referral form that he needed medication to "ensure safety of self and others," and indicated that without medication "[his] condition will deteriorate to the point of constituting a mental health emergency." Mental Health Involuntary Medication Referral [doc. # 77–4].

As Mr. Batts began taking medication following the panel's decision, his condition improved, and he was transferred back to his cell block from the inpatient mental health unit. Molloy Aff. ¶ 16–23. Though Mr. Batts has displayed some irrational behavior since that

time, he currently has no behavioral issues and has shown "marked improvement in organization of thought and clearer speech," as well as a "lower level of delusional thinking." *Id.* ¶¶ 16–27. According to Nurse Molloy, "[t]he plan [is] to continue to monitor symptoms, and encourage symptom recognition group attendance." *Id.* ¶ 27. It is not clear from the evidence submitted whether Mr. Batts is still being involuntarily medicated.

B. Procedural History
*4 Mr. Batts filed this action on July 19, 2004, maintaining that he had wrongfully been subject to mental health treatment to which he did not consent. Mr. Batts's original complaint named "Todd Boganoff" as a defendant. *See* Complaint [doc. # 2]. Thereafter, Mr. Batts amended his complaint to include Theresa Lantz and David Budlong, but in his amended complaint, Mr. Batts omitted mention of Dr. Bogdanoff. *See* Amended Complaint [doc. # 31]. As a consequence, Dr. Bogdanoff was terminated as a defendant. Later, Mr. Batts maintained that his failure to include Dr. Bogdanoff as a defendant was due to his mistaken impression that it was unnecessary, and that he did indeed intend to pursue his claims against Dr. Bogdanoff. Therefore, he moved to further amend his complaint to reinstate Dr. Bogdanoff as a defendant. *See* Pl.'s Mot. for Leave of Ct. to File Second Am. Comp. [doc. # 44]. Next, Mr. Batts filed a Notice of Motion Under Rule Fourteen [doc. # 48] in which he sought to withdraw the amended complaint [doc. # 31]. The Court granted Mr. Batts's request and explained to him that as a result, "no additional claims or defendants listed in the Amended Complaint are part of this lawsuit." *Ruling and Order* [doc. # 52] at 7. Finally, Mr. Batts filed a Motion for Order [doc. # 56] requesting that the Court grant his previously filed motion to file his second amended complaint. The Court reserved ruling on his requests to file a second amended complaint until Mr. Batts had indicated whether he wanted the Court to appoint an attorney to represent him. *See* Order [doc. # 68]. Thereafter, Mr. Batts stated that he would indeed like the assistance of counsel, and the Court directed the Clerk to locate *pro bono* counsel for him. *See* Ruling and Order [doc. # 72]. To date, however, *pro bono* counsel has not yet been appointed.

In light of this history, the Court issues the following orders: (1) Mr. Batts is granted permission to file a second amended complaint in which he should name all defendants against whom he intends to proceed. Mr. Batts is advised, however, that it may be in his interest to wait until he has received assistance of the counsel that the Court has directed the Clerk to find for him. The Court will not require Mr. Batts to file an amended complaint

until counsel is appointed. (2) Mr. Batts's Mot. for Leave of Ct. to File Second Am. Comp. [doc. # 44] and Mot. for Order [doc. # 56] are DENIED as moot. (3) The Clerk is directed to note that, as a result of the Court's April 1 Ruling and Order [doc. # 52], only Dr. Bogdanoff is currently a defendant.

Mr. Batts has also filed a Mot. for Payment of Filing Fee Costs [doc. # 80] in which he requests that Dr. Bogdanoff be ordered to pay the $150 filing fee for this case. Mr. Batts notes that it is unfair for him to have to pay the filing fee from his institutional inmate account. Instead, he believes that Dr. Bogdanoff should pay the fee. While the Court is sensitive to the financial burden the filing fee imposes, there is no authority to support Mr. Batts's request, and his Mot. for Payment of Filing Fee Costs [doc. # 80] is therefore DENIED. If Mr. Batts prevails in this litigation, he may be able to seek to recover his costs. *See* Fed.R.Civ.P. 54.

*5 Mr. Batts has five currently pending motions for preliminary injunctive relief relating to his mental health treatment. In the first motion, Mr. Batts seeks a "pre-restraining order" forbidding correctional officials from transferring him to Garner Correctional Institution. *See* Motion and Motion for Pre–Order [doc. # 64]. On April 1, 2005, the Court dismissed all claims regarding Mr. Batts's housing assignments and mental health classification. *See* Ruling and Order [doc. # 52]. Because these claims have been dismissed, Mr. Batts has no likelihood of success on the merits of these claims. Therefore, Mr. Batts's request for preliminary injunctive relief in the form of an order that he not be confined at Garner Correctional Institution [doc. # 64] is DENIED.

The second motion [doc. # 66] is captioned "Objection to Summary Judgment and Motion for Restraining Order." In the motion, Mr. Batts argues that defendant's motion for summary judgment should not be granted. Mr. Batts does not include any request for relief. Accordingly, this motion [doc. # 66] is DENIED as moot, and the Court will consider Mr. Batts's filing as an opposition to Defendant's motion for summary judgment, discussed below.

In his third motion, Mr. Batts seeks an order "denying the plaintiff Charles Rodriguez–Batts psychotic state medication." He argues that the prison doctors erred in prescribing medication for him because he has not acted out, displayed suicidal tendencies, or injured himself or others. Mr. Batts states: "The anti-psychotic medication intoxitioned into the plaintiff's body caused plaintiff immune system becomes defenseless to jail/prison predators, extortioners, targetted by gang members in

concealment from the state prison mandatory programs and unsuspected terror." Motion for Order [Doc. # 69–1]. In his supporting memorandum, Mr. Batts repeatedly refers to a federal cell. Mr. Batts, however, is a state prisoner and is confined in a state correctional facility. He also states: "Upon information and belief an 26 year old italian female snitch agency social worker from UConn stated she was an informant to a hallway custody correction's officer an that the plaintiff 43 years old has 17 years incarcerated has the I that other inmates advance hearing from useing the plaintiff music talent and that she want to get some of that special power." Memorandum of Law in Support of Motion for Order [Doc. # 69–2] at 1.

Ms. Batts's fourth request is contained in his Letter of Plaintiff to Judge [doc. # 74], dated September 22, 2005. He states that he has been forcibly medicated since July 29, 2005. Mr. Batts contends that correctional doctors are abusing their authority by conducting panels to review involuntary administration of psychotropic medication and asks that the Court order defendant to terminate involuntary administration of medication and not to conduct further panels regarding his medication.

In his fifth motion, Mr. Batts seeks a temporary restraining order and preliminary and permanent injunctions to stop the involuntary administration of psychotropic medication. He also revisits the issue of his confinement at Garner Correctional Institution. *See* Mot. for TRO and Prelim. and Permanent Inj. Relief [doc. # 75–1].

\*6 Mr. Batts's sixth motion similarly requests that the Court enjoin his forced medication and address his confinement. *See* Additional Objection to Summary Judgment and Motion for Restraining Order [doc. # 82].

Defendant has filed a Motion for Summary Judgment [doc. # 61–1] in which he maintains that all of Mr. Batts's claims should be dismissed.

## II

The Court turns first to Mr. Batts's numerous requests for a temporary restraining order and a preliminary injunction. Preliminary injunctive relief " 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Moore v. Consolidated Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997)). The Second Circuit

has a well-established standard for injunctive relief. To warrant preliminary injunctive relief, the moving party "must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." *Brewer v. West Irondequoit Central Sch. Dist.,* 212 F.3d 738, 743–44 (2d Cir.2000).[1]

As this Court has previously explained, an inmate has a right, under certain circumstances, to refuse anti-psychotic medication. *See* Ruling and Order [doc. # 52] at 3 (citing *Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990)). If an inmate has a serious mental illness, correctional officials can treat that inmate with anti-psychotic medications against his will only when "the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Harper,* 494 U.S. at 227. Mr. Batts maintains that he does not need anti-psychotic medication. However, he offers no evidence to support his assertion other than his own opinion and the fact that he has not recently had any violent incidents.

When considering whether forced medication is necessary, courts are to defer to the judgment of medical personnel. "[A]n inmate's interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge." *Harper,* 494 U.S. at 231. Therefore, where "[a]dequate procedures exist" to ensure that involuntary medication is appropriate, judges are to "avoid 'unnecessary intrusion into either medical or correctional judgments.' " *Id.* at 233 (quoting *Vitek v. Jones,* 445 U.S. 480 496, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980)).

On the current record, it appears that sufficient safeguards ensured that the involuntary medication of Mr. Batts was appropriate. Mr. Batts had a history of violence when not on medication, and the evidence supports the panel's conclusion that without medication, he would be a "significant danger to [himself] or others," *Harper,* 494 U.S. at 226, a conclusion consistent with the findings of his other treating physicians. Before being involuntarily medicated, Mr. Batts was given a hearing in front of independent panel members with mental health expertise. *See id.* at 233 (finding the "independence of the decision maker" of particular significance). Mr. Batts was permitted to appear before the panel and present evidence. *See id.* at 235 (finding procedural safeguards appropriate where the inmate was given "notice, the right to be

present at an adversary hearing, and the right to present and cross-examine witnesses"). And Mr. Batts was afforded a representative to advocate for him. *See id.* at 236 ("Given the nature of the decision to be made, we conclude that the provision of an independent lay adviser who understands the psychiatric issues involved is sufficient protection.").

\*7 Nor has Mr. Batts alleged any facts from which the Court could conclude that the hearing was not an appropriate vehicle to resolve the question of proper treatment for him. *See id.* at 233 ("There is no indication that any institutional biases affected or altered the decision to medicate respondent against his will."). In sum, it appears at this time that the panel hearing was an appropriate "accommodation between an inmate's liberty interest in avoiding the forced administration of antipsychotic drugs and the State's interests in providing appropriate medical treatment to reduce the danger that an inmate suffering from a serious mental disorder represents to himself and others." *Id.* at 236.

Therefore, Mr. Batts has not demonstrated that he is likely to succeed on the merits of his claim, and has not even demonstrated that there remains a sufficiently serious question going to the merits of the case that would warrant a preliminary injunction. Mr. Batts's motions for preliminary injunctive relief [docs. # 69–1, 74, 75–1, and 82] are, therefore, DENIED but without prejudice to renewal should circumstances change. Mr. Batts's request for permanent injunction will be considered in conjunction with the merits of his claims. Because Mr. Batts has not yet had the assistance of counsel that the Court has directed the Clerk to find for him, the Court DENIES Defendant's Motion for Summary Judgement [doc. # 61–1] without prejudice at this time. Defendant is authorized to renew his summary judgment motion once Mr. Batts has obtained representation.

III

In sum, the Court issues the following orders: (1) Mr. Batts is granted permission to file a second amended complaint in which he should name all defendants against which he intends to proceed. He is advised, however, that it may be in his interest to wait until he has received assistance of the counsel that the Court has directed the Clerk to find for him. (2) Pl.'s Mot. for Leave of Ct. to File Second Am. Comp. [doc. # 44] is DENIED as moot. (3) Pl.'s Mot. for Order [doc. # 56] is DENIED as moot. (3) The Clerk is directed to note that, as a result of the Court's April 1 Ruling and Order [doc. # 52], only Dr. Bogdanoff is currently a defendant. (4) Pl.'s Mot. for Payment of Filing fee Costs [doc. # 80] is DENIED. (5) Pl.'s Mot. and Mot. for Pre–Order [doc. # 64] is DENIED. (6) Pl.'s Objection to Summ. J. and Mot. for Restraining Order [doc. # 66] is DENIED. (7) Pl.'s Mot. for Order [doc. # 69–1], Letter of Pl. to Judge [doc. # 74], Mot. for TRO and Prelim. and Permanent Inj. Relief [doc. # 75–1], and Additional Objection to Summ. J. and Mot. for Restraining Order [doc. # 82] are DENIED without prejudice. (8) Def.'s Mot. for Summ. J. is DENIED [doc. # 61–1] without prejudice to renewal once Mr. Batts has been appointed counsel. (9) The Clerk is directed to continue its efforts to locate *pro bono* legal representation for Mr. Batts.

IT IS SO ORDERED,

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 3543774

Footnotes

1    Although a properly supported motion for preliminary injunction requires a hearing, oral argument and testimony are not required in all cases. *See Drywall Tapers & Pointers Local 1974 v. Local 530,* 954 F.2d 69, 76–77 (2d Cir.1992). "Where, as here, 'the record before a district court permits it to conclude that there is no factual dispute which must be resolved by an evidentiary hearing, a preliminary injunction may be granted or denied without hearing oral testimony.' " *Thompson v. Lantz,* No. 3:04 CV 2084, 2005 WL 2387706, at \*2 (D.Conn. Sept.28, 2005) (quoting 7 James W. Moore, et al., *Moore's Federal Practice* ¶ 65.04[3] (2d ed.1995)). Upon review of the record, the Court determines that oral testimony and argument are not necessary in this case.

                      © 2016 Thomson Reuters. No claim to original U.S. Government Works.

   © 2016 Thomson Reuters. No claim to original U.S. Government Works.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **KACEY LEWIS** | : | **CIVIL ACTION NO. 3:12cv1070 (VLB)** |
| | : | |
| **v.** | : | |
| | : | |
| **MARK FRAYNE, ET AL.,** | : | **MAY 10, 2016** |

### AFFIDAVIT OF MARK FRAYNE, Psy.D.

I, Mark Frayne, Psy. D., do hereby depose and say that:

1. I am over the age of 18 and understand the obligations of an oath.

2. I am a supervising psychologist II for the State of Connecticut University of Connecticut Health Center's Correctional Managed Health Care Program, having held this position since April of 2006.

3. My responsibilities in this position have consisted of managing the mental health programming for inmates at the Northern Correctional Institution as well as directly providing mental health to Northern inmates.

4. It is in that capacity that I am familiar with the plaintiff, Kacey Lewis. My opinions stated herein are based upon a reasonable degree of medical probability.

5. Inmate Lewis was incarcerated at NCI from July 19, 2010 until his transfer to the Garner Correctional Institution on November 18, 2011.

6. Dr. Gerard Gagne and I treated the plaintiff for his mental illness during his incarceration at Northern.

7. In my medical opinion, during his time at Northern, Mr. Lewis suffered from a psychotic disorder which required medication management, education regarding the nature of his disorder, and supportive therapy.

8. After increasingly paranoid, hostile and aggressive behaviors throughout the months of April and May, 2011, I became increasingly concerned that Mr. Lewis was becoming so unstable as to require infirmary care.

9. On May 19, 2011, I became of the opinion that Mr. Lewis needed to be removed from his custody cell and placed in a medical observation cell in the Northern CI medical unit.

10. The cell in which Mr. Lewis was placed did not have excrement smeared on the walls or floors, nor were there any insects infesting the cell. Mr. Lewis was not offered soiled clothing. He was housed in a medical unit for medical observation, with no access to clothing or implements he could use to harm himself or others.

11. Thereafter, on May 31, 2011, Dr. Gagne notified Mr. Lewis that the next day, June 1, 2011, he would be reviewed by a panel and considered for involuntary psychoactive medication.

12. On June 1, 2011, a panel convened to review Mr. Lewis's presentation and my recommendation. The panel consisted of Dr. Robert Berger, registered nurse Deborah Ward and myself. I served as Mr. Lewis's advocate.

13. The plaintiff refused to cooperate with the panel process or to speak with me.

14. At the conclusion of the review, the panel granted permission to administer psychoactive medications to Mr. Lewis.

15. Thereafter, the plaintiff was involuntarily medicated on several occasions because he continued to refuse to take psychoactive medications to treat his condition.

16. At no time did I or Dr. Gagne threaten the plaintiff regarding his court proceedings or any other matter.

17. I have had no contact with Mr. Lewis since his transfer to Garner CI in November 2011.

_____

Mark Frayne, Psy.D.

Subscribed and sworn to before me this 10th day of May, 2016.

_____

Notary Public/Commissioner of Superior Court